IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **LUIS A. BAUZ-GONZALEZ,** <br><br> **Plaintiffs,** <br><br> v. <br><br> **PRESBYTERIAN COMMUNITY HOSPITAL, INC.; et al.** <br><br> **Defendants.** | **CIVIL NO. 13-1886 (PAD)** |

**OPINION AND ORDER**

Before the Court is third-party defendant SIMED's unopposed "Request to Dismissal Pursuant to Rule 12(b)(6) (Docket No. 31). For the reasons stated below, the request is GRANTED.

**I.   FACTUAL BACKGROUND**

On December 2, 2013, plaintiff Luis A. Bauz-González initiated this action against several defendants including the Presbyterian Community Hospital ("Presbyterian Hospital"), alleging that its medical and nursing staff departed from the medical standards of care and failed to act in a prudent, reasonable and responsible manner in violation of Articles 1802 and 1803 of the Puerto Rico Civil Code, P.R. Laws Ann. §§ 5141–5142 (Docket No. 1). More specifically, he complains that the Presbyterian Hospital failed to provide adequate medical care and treatment to his deceased mother, Mariana González-Pérez. Id. at ¶¶ 20-21.

Subsequently, the Presbyterian Hospital filed a third-party complaint against Dr. Charles Cuff-Negroni and the Sindicato de Aseguradores para la Suscripción Conjunta de Seguro de Responsabilidad Profesional Médico-Hospitalaria ("SIMED"), as the alleged insurance carrier for doctor Cuff-Negroni (Docket No. 9). To that end, it claimed that pursuant to plaintiff's complaint,

doctor Cuff-Negroni's negligent acts and/or omissions and alleged departures from the medical standards caused the death of González-Pérez. Id. at ¶ 5. As to SIMED, it asserted entitlement to recovery of any and all amounts that may be adjudged against it from the doctor and his insurer. Id. at ¶ 2 and 8.

On May 31, 2014, SIMED filed a motion requesting that all claims against it be dismissed inasmuch as, at the time it received the complaint, there was no insurance policy in force on behalf of doctor Cuff-Negroni (Docket No. 31).[1] The motion stands unopposed.

## II. STANDARD OF REVIEW

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must allege a plausible entitlement to relief. Rodríguez-Vives v. Puerto Rico Firefighters Corps., 743 F.3d 278, 283 (1st Cir. 2014); Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 53 (1st Cir. 2013); Rodríguez-Ortiz v. Margo Caribe, 490 F.3d 92, 95 (1st Cir. 2007).

Plausibility involves a context-specific task calling on courts to examine the complaint as a whole, separating factual allegations (which must be accepted as true) from conclusory allegations (which need not be credited). García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013); Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir.2012). Even though detailed factual allegations are not required, more than labels and conclusions are needed. Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011). Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but has not shown – that the pleader is entitled to relief. Ashcroft v. Iqbal, 556 U.S. 663, 678 (2009).

---

[1] According to SIMED, doctor Cuff-Negroni informed in his answer to the third-party complaint that he has an insurance policy that provides coverage for the malpractice claim in this case with the Puerto Rico Medical Defense Insurance Company. See, Docket No. 25 at ¶¶ 3 and 12 and Docket No. 34 at ¶ 3.

In conducting this analysis, the Court's primary focus is on the complaint. Carrero-Ojeda v. Autoridad de Energía Eléctrica, 755 F.3d 711, 716 (1st Cir. 2014). As the First Circuit reiterated in Carrero-Ojeda, ordinarily, courts may not consider any documents "outside of the complaint, or not expressly incorporated therein," without converting the motion into one for summary judgment. Id. (internal citations omitted). "However, there is a narrow exception for documents – the authenticity of which is not challenged – that are central to the plaintiff's claim or sufficiently referred to in the complaint, even if those documents are not physically attached to the pleading." Id. (internal citations omitted).

### III.   DISCUSSION[2]

In its motion to dismiss, SIMED contends that at the time the third-party complaint was filed by the Presbyterian Hospital, there was no claims-made policy in force on behalf of doctor Cuff-Negroni (Docket No. 31 at ¶ 3). Although SIMED acknowledges that doctor Cuff-Negroni had two (2) claims-made policies with SIMED, it asserts those were not in force at the time the claim was received in this case. Id. at ¶ 4.

The first insurance policy (PRM-300) was effective from March 12, 1997 to March 12, 1998, and had a retroactive date of March 12, 1998 (Docket No. 31, Exh. 2 at p. 2). This policy was not renewed after it expired (Docket No. 31, Exh. 1 at ¶ 4). The second insurance policy (PRM-10738) was effective from March 13, 2011 to March 13, 2012, and had a retroactive date of March 13, 2001 (Docket No. 31, Exh. 3 at p. 2). As with the first policy, it was not renewed after the expiration date (Docket No. 31, Exh. 1 at ¶ 4).

---

[2] The discussion is based on the well-pleaded facts in the complaint and key documents attached to SIMED's motion to dismiss (to wit: Maria del Carmen Alonso Valle's Sworn Statement and certified copies of policies number PRM-300 and PRM-10738), the authenticity of which are not disputed.

Luis A. Bauz-González v. Presbyterian Hospital, *et al.*
Civil No. 13-1886 (PAD)
Opinion and Order
Page 4

Pursuant to the policies' language, these do not apply to any claim that occur subsequent to the termination date of the policy or to **any claim first made against the insured after the termination of the policy**. See, Docket No. 31, Exh. 2 at pp. 9-10 and Exh. 3 at pp. 21-22.  In support of the motion to dismiss, SIMED submitted a Sworn Statement from Mrs. Maria del Carmen Alfonso-Valle, SIMED's Underwriting Manager and certified copies of the two (2) claims-made policies in favor of doctor Cuff- Negroni.

"An 'occurrence' policy protects the policyholder from liability for any act done while the policy is in effect, whereas a 'claims made' policy protects the holder only against claims made during the life of the policy." Sarsfield v. Great American Ins. Co. of New York, 335 Fed.Appx. 63, 67 (1st Cir. 2009) (quoting St. Paul Fire & Marine Ins. Co. v. Barry, 438 U.S. 531, 535 (1978)). Therefore, in the context of claims-made policies, the determinative event is the timing of the claim. See Edwards v. Lexington Ins. Co., 507 F.3d 35, 41 (1st Cir.2007); see also, Rodriguez v. Hospital Metropolitano Cabo Rojo, 2010 WL 624143, *3 (D.P.R. February 17, 2010).

In this case, the third-party complaint against doctor Cuff-Negroni was filed on February 4, 2014 (Docket No. 9).  At that time, doctor Cuff did not have a claims-made policy in force with SIMED.  In fact, as part of doctor Cuff-Negroni's answer to the third-party complaint, he informed that he has an insurance policy that provides coverage for the malpractice claim in this case with the Puerto Rico Medical Defense Insurance Company. See, Docket No.  25 at ¶¶ 3 and 12.  Thus, only one conclusion follows: Presbyterian Hospital's claims against SIMED as the insurance carrier of doctor Cuff-Negroni fail as a matter of law.  As such, they must be dismissed.

<u>Luis A. Bauz-González</u> v. <u>Presbyterian Hospital, *et al.*</u>
Civil No. 13-1886 (PAD)
Opinion and Order
Page 5

## IV.    CONCLUSION

For the reasons stated, SIMED's request for dismissal (Docket No. 31) is GRANTED. In turn, Presbyterian Hospital's third-party claim against SIMED is DISMISSED WITH PREJUDICE.

Partial judgment shall be entered accordingly.

**SO ORDERED**.

In San Juan, Puerto Rico, this 30th day of October, 2014.

<u>s/Pedro A. Delgado-Hernández</u>
PEDRO A. DELGADO-HERNÁNDEZ
United States District Judge